IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FILED
Oct. 21, 2025
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA          )
                                  )
v.                                )          Criminal No. 3:19CR117–HEH
                                  )
JAMES LEONARD SMITH,              )
                                  )
        Petitioner.               )

**MEMORANDUM OPINION**
**(Denying 28 U.S.C. § 2255 Motion)**

THIS MATTER is before the Court on federal inmate James Leonard Smith's

("Petitioner") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence

("§ 2255 Motion," ECF No. 190). Petitioner is proceeding *pro se*. The Government has

responded, asserting that Petitioner's claims lack merit. For the reasons set forth below,

Petitioner's § 2255 Motion will be denied.[1]

## I.        Procedural History

### A.        Criminal Trial and Appeal

On February 18, 2020, Petitioner, Brian Michael Bridge, and James Michael

Johnson were charged in an eight-count Superseding Indictment with: conspiracy to

commit wire fraud (Count One); wire fraud (Counts Two through Seven); and conspiracy

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court
corrects the spelling, capitalization, and punctuation in the quotations from the parties'
submissions.

to launder monetary instruments (Count Eight). Petitioner and Johnson proceeded to a jury trial. Bridge was never apprehended.

At trial, the Government's first witness was Todd Varon.[2] Varon was the founder of a company called Ultrasonic Probe, which was founded to develop a new medical device. (ECF No. 134, at 45.) In 2016, Varon was seeking to raise capital for this company. (*Id.* at 46.) In that process he was introduced to Petitioner's coconspirator, James Michael Johnson in early 2016. (*Id.* at 47.) Johnson told Varon that a London-based company called Chimera, run by Michael Bridge, could potentially be interested in investing in Varon's company. (*Id.* at 51.)[3] Johnson showed Varon documentation reflecting that Chimera had a billion and a half euros in a bank. (*Id.* at 51–52.) Varon recounted Chimera's and Johnson's proposal to invest in Varon's company:

> And so their proposal was that they would invest in our company from $3 to $5 million. But before they would make that investment, we would deposit a certain amount of money as a loan or earnest money. They used different terms. But basically we would lend money to them for a period of four months, and they would pay us a good interest rate during that time.
> That money would be guaranteed, and that at the end of those four months Chimera would make the capital investment in our company and also return our principal and the interest.

(*Id.* at 51.)

Pursuant to these conversations, Johnson showed Varon documents reflecting that in return for a loan of $200,000, at the end of four months Chimera would return the

---

[2] The evidence against Petitioner and his coconspirator, James Michael Johnson, was overwhelming. The Court does not attempt to recite all of that evidence here. Rather, the Court provides a summary of that evidence as context for the lack of merit of Petitioner's claims.

[3] Brian Michael Bridge was the CEO of Chimera and Ion. (ECF No. 135, at 113.)

$200,000 along with a $16,000 interest payment. (*Id.* at 58–59.) Additionally, Johnson

insisted the principal would be "guaranteed" to be safe. (*Id.* at 54.) Specifically,

> It would be guaranteed by Santander Bank. That Santander Bank had
> the money. Had a billion and a half euros in an account [for Chimera], and
> that they would use this blocked funds facility in our benefit. . . . Santander
> Bank would hold the funds, put an administrative hold on that money, for the
> benefit of us as the lender. And that if Chimera did not pay back at the end
> of the four months, that Santander Bank would send us the money along with
> a penalty.

(*Id.* at 54.) To support the notion that Santander Bank would guarantee the loans,

Johnson and Petitioner provided Varon with documents purportedly from Miguel

Rubalcava with Santander Bank. In these documents, Rubalcava represented that

Chimera and Michael Bridge had an account with Santander Bank. (*Id.* at 70–76.)

Varon's subsequent research revealed that: (1) Santander Bank did not provide

"Blocked Funds Letters"; (2) Rubalcava was not an employee of Santander Bank; (3)

there was no Santander Bank office at the address listed on the correspondence; (4) "[t]he

account number referenced in the correspondence [did] not have the full 20 digit numbers

of a Santander account"; and, (5) "[t]here [was] no 'CIF' number referenced which [was]

the number used to identify companies in Spain." (*Id.* at 76–77.) Varon shared these

concerns with Johnson in an email dated May 17, 2016, and directed Johnson on how

Johnson could assure him this deal was not fraudulent. (*Id.* at 134, at 73, 77–78.)

Johnson shared that email with Petitioner. (ECF No. 136, at 110–111.) Johnson and

Petitioner simply told Varon his information was wrong and that he should speak to

Rubalcava. (ECF No. 134, at 78.) On June 22, 2016, Varon followed up with an email to

Johnson offering to have a relative of his "who live[d] in Madrid who would be willing to

3

visit the office on second floor of the building to confirm that it is a Santander office and that Rubalcava works there." (*Id.* at 83–85.) Johnson did not take Varon up on that offer or any of Varon's suggestions to verify the legitimacy of Santander Bank's relationship with Chimera. (*Id.* at 85.) Varon and his company decided not to lend money to Chimera. (*Id.* at 86.)

According to Petitioner, he initially became involved with Michael Bridge in 2014 on the promise of being involved in large oil transactions. (ECF No. 136, at 83.) By September of 2015, none of those transactions had materialized. (*Id.* at 83–84.) Nevertheless, in 2016, Petitioner became involved with Bridge and Chimera using the Block Fund Letters to make short term loans to raise capital on behalf of Chimera. (*Id.* at 86.) Prior to that time, Petitioner had been informed by FBI Special Agent Joe Quinn that investment schemes that purport to be "riskless" for the investor's capital, but guarantee a high rate of return, are almost certainly scams. (*Id.* at 86.) Nevertheless, thereafter Petitioner and his coconspirators guaranteed victim-investor James Hill that his $100,000 loan was not at risk because of the Blocked Fund Letter. (*Id.* at 86–87.) Immediately, upon making that $100,000 loan to Chimera, $26,500 of the proceeds were pocketed by Petitioner. (*Id.* at 89–90.) Petitioner unpersuasively suggested this amount was fair compensation for Petitioner filling in some information on the loan documents. (*Id.* at 91–92.)

Stuart Harlow, a friend of Johnson, made a $105,000 loan to Chimera. (*Id.* at 95.) Harlow made that loan on the assurances that the loan would be safe. (*Id.* at 95.) Harlow was a friend of Johnson, that Petitioner only met with one time. (*Id.* at 95–96.) Upon

Harlow making that "loan," Petitioner immediately received $63,650 for what he alleged was compensation for minor administrative work. (*Id.* at 96.) Petitioner could not credibly explain why, if these loans were supposedly made to supply Chimera and Bridge with much needed short-term capital for the alleged multimillion dollar oil deals, he would receive over half the value of the loans. (*See, e.g., id.* at 88–99.) Similarly, Petitioner could not explain why, when Sharon Hill "loaned," Chimera $100,000 for short-term capital for its oil deals, none of the money went to Chimera. (*Id.* at 100–01.) Instead, Petitioner drafted an email reflecting the "payout" to the conspirators showing that, of that entire $100,000, Petitioner received $23,000, the largest single payout. (ECF No. 136, at 100.)

Overall, the evidence showed that, between May of 2015 and November of 2016, Petitioner received hundreds of thousands of dollars for a paltry amount of work. Numerous individuals were defrauded out of millions of dollars.

At the conclusion of the jury trial, Petitioner was convicted of: one count of conspiracy to commit wire fraud (Count One); five counts of wire fraud (Counts Two, Three, Four, Six, and Seven); and, one count of conspiracy to launder monetary instruments (Count Eight). (ECF No. 162, at 1.) The Court sentenced Petitioner to one hundred and sixty-eight months of imprisonment. (*Id.* at 2.)

On appeal, Petitioner argued that evidence was improperly admitted under Fed. R. Evid. 404(b). *United States v. Johnson*, No. 21-4126, 2022 WL 4376082, at *1 (4th Cir. Sept. 22, 2022). In rejecting that challenge, the United States Court of Appeals for the Fourth Circuit stated:

5

Before trial, the Government moved to admit evidence of Smith's other acts under Fed. R. Evid. 404(b). In particular, the Government sought to introduce evidence that, in 2008, Smith was involved in two financial operations. First, Smith worked with a company that, according to Smith during his interview with law enforcement, he later learned was "a 'Ponzi scheme.'" (J.A. 65). Second, Smith had operated a company that traded "'[m]edium [t]erm [n]otes'" and promised investors "'risk-less principal' transactions" and a high rate of return (5% per month, which would eventually increase to 8% per month). (J.A. 63). The Government also sought to introduce evidence that Smith had been interviewed by the FBI in 2013 regarding his involvement in these two financial operations and that an FBI agent at that time warned Smith "that any investment program purporting to provide low-or no-risk returns that are above normal rates (such as 3% per month) is, in all likelihood, a fraudulent investment." (J.A. 65). In response, Smith informed the agent that he was not responsible for the investments and also stated that he believed the investors received all their funds. The district court granted the motion, permitting the evidence to be submitted to the jury and ruling that the evidence was relevant to Smith's knowledge and intent.

We review a district court's determination of the admissibility of evidence under Rule 404(b) for abuse of discretion. *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). A district court will not be found to have abused its discretion unless its decision to admit evidence under Rule 404(b) was arbitrary or irrational. *See United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990). Evidence of prior acts is admissible under Rule 404(b) if the evidence is: (1) relevant to an issue other than the general character of the defendant; (2) necessary, in that it is probative of an element of the offense; and (3) reliable. Further, the probative value of the evidence must not be substantially outweighed by its prejudicial value. Fed. R. Evid. 403; *Queen*, 132 F.3d at 995. Limiting jury instructions explaining the purpose for admitting evidence of prior acts and advance notice of the intent to introduce prior act evidence provide additional protection to defendants. *Queen*, 132 F.3d at 998.

Smith first argues that his actions in 2008 were not probative of his intent because the evidence failed to show that the 2008 acts were illegal or, if they were, that Smith was aware of this fact at the time. However, such evidence was not necessary, and the Government recognized that it was possible that "the evidence does not constitute a crime or wrong on Smith's part." (J.A. 62). The prior acts evidence at issue showed that Smith had previously worked with or for companies that offered investments that had the hallmarks of fraud and that Smith was specifically warned about these hallmarks. This evidence was probative in that it made it more likely that Smith knew that the similar charged conduct was a part of a fraudulent

scheme, that Smith knew that the investment terms were suspicious, and that Smith had the intent to join an unlawful scheme. *See United States v. Agramonte-Quezada*, 30 F.4th 1, 15 (1st Cir. 2022) (admitting evidence of prior canine alert, where current and prior alert were "highly factually similar," because prior alert was relevant to show opportunity, intent, common plan, and knowledge, even though prior alert did not result in recovery of drugs or arrest).

Next, Smith asserts that the other acts evidence was not reliable because the agent's testimony regarding the hallmarks of a fraudulent scheme was erroneous. Specifically, he asserts that a riskless principal transaction can be a legitimate transaction. Smith misunderstands the reliability requirement. "Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2006) (internal quotation marks omitted). Thus, the question is not whether the agent correctly identified the hallmarks of a fraudulent scheme but rather whether the agent's recounting of his interactions with Smith was "preposterous." Smith does not dispute that the agent's testimony recounting their conversation was believable. Smith was free to cross-examine the agent regarding his knowledge of investments, and in fact, Smith himself testified on this issue.

Finally, Smith asserts that the admission of the agent's testimony was unduly prejudicial because "riskless principal transactions" can be legitimate and, therefore, would not give Smith reason to suspect fraud either in 2008 or in the instant case. Smith contends that the jury might have concluded that he must have known the charged scheme was fraudulent based on the agent's erroneous testimony that Smith was involved in a fraudulent scheme earlier. Again, Smith misunderstands the requirements of evidentiary rules. Evidence which is prejudicial only because it is highly probative is not the type of prejudice that Rule 403 seeks to prevent. *See Queen*, 132 F.3d at 998. Instead, prejudice in this sense refers to evidence that "would invoke emotion in place of reason" or cause confusion. *Id.*

Here, any prejudice was handily outweighed by the probative value of the evidence. Moreover, the district court mitigated the risk of prejudice with its repeated limiting instructions. *See United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("[A]ny risk of such prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider [Rule 404(b)] evidence."). Further, the evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (internal quotation marks omitted). Finally, Smith testified at trial, explaining his understanding of no-risk investments and of the agent's warning in that regard. Thus, Smith

presented evidence contradicting the agent's testimony and further mitigated
any prejudice.  The district court therefore did not abuse its discretion under
Rule 404(b).

*Id.* at *2–3 (alterations in original) (footnote omitted).

### B.    Petitioner's § 2255 Original Claims

On December 14, 2022, Petitioner filed his § 2255 Motion.  (ECF No. 190, at 21.)[4]

In his § 2255 Motion, Petitioner contends that he was denied the effective assistance of

counsel.  Specifically, Petitioner asserts:

| | |
|---|---|
| Claim One | Counsel should have used emails to show that Smith did not know that Chimera was defrauding its investors.  (ECF No. 190, at 1.) |
| Claim Two | (a)  Counsel failed to call Stuart Anderson and Miguel Rubalcava as witnesses.  (*Id.* at 2.)<br>(b) Counsel should have objected to the testimony of the Government witness who stated Rubalcava was not an employee of Santander Bank.  (*Id.*)<br>(c) Counsel improperly encouraged Smith to take the stand. (*Id.*) |
| Claim Three | (a) Counsel failed to properly cross-examine the prosecution's witnesses, including the FBI agent.  (*Id.* at 3.)<br>(b) Counsel failed to call Jon Garrett.  (*Id.*)<br>(c) Counsel failed to challenge Smith's sentencing enhancement for obstruction of justice for committing perjury.  (*Id.*)<br>(d) Counsel failed to challenge the fact that the "prosecution misrepresented the total dollar amount by including transactions totaling $2.7M."  (*Id.* at 3–4.) |
| Claim Four | "My attorney assured me trial was our only option."  (*Id.* at 4.) |

---

[4] This is the date that Petitioner swears that he placed his § 2255 Motion in the prison mailing
system for delivery to this Court.  Accordingly, the Court deems the § 2255 Motion filed as of
this date. *See Houston v. Lack*, 487 U.S. 266 (1988).

## II.    The Motion to Amend

On September 28, 2023, Petitioner moved to amend his § 2255 to add or modify his claims of ineffective assistance of trial counsel.  (ECF No. 206.)

### A.    Petitioner's Proposed Amended Claims

In his Motion to Amend, Petitioner proposes to add or amend the following claims of ineffective assistance of trial counsel:[5]

1. Counsel failed to go over the discovery material with defendant in this case before trial . . . at least once.

2. Counsel failed to present any plea offer that was presented to him during pretrial stage.  When government emailed it to him, counsel never presented [it] to defendant.  Even if defendant was professing his innocence, it [is] still defendant's right to know one was on the table.

3. Counsel ineffectiveness was during the plea offer stage. Counsel['s] professional duty is to present any type of offer that was offer[ed] by the government.

4. Trial counsel failed to prepare for trial by failing to submit the defendant's witness list and use his subpoena power to secure critical testimony for defendant['s] case . . . .

5. Trial counsel failed to present evidence that defendant prepared for counsel from his own personal files as well as the discovery material he gathered before trial [including] notes, email, text, [and] transactions to refute the government case before the jury.

6. Counsel coerced the defendant into taking the case to trial [in which] that defendant's exposure was a maximum 8 years sentence, again showing counsel was ineffective.

7. Counsel was ineffective by coercing the defendant to take [the] stand on his behalf when there was a likelihood to an exposure to self-incrimination, perjury and [an enhanced penalty based on] obstruction of justice []. . . .

8. [(a)] Counsel was ineffective for failure to object to the PSR Sentencing Memorandum for intended loss amount instead of actual loss amount foreseeable to the defendant.  [(b)] Failure to object to the obstruction of justice, perjury and victim enhancement for preservation to appeal for "plain error" was egregious by trial counsel. When the actual loss should be

---

[5] The Court has sought to leave the Petitioner's language intact, except when using bracketed language to make clearer the relief sought by Petitioner.

the loss amount that the defendant receive[d] during the alleged conspiracy. Counsel failed to object to the enhancement the court applied for perjury or obstruction of justice which violated the defendant's Sixth Amendment Right to testify on his . . . own behalf.  Counsel should have objected to this enhancement.

9. Trial counsel's ineffectiveness fell below legal standards when counsel failed to turn over all documents to defendant to prepare his direct appeal and post convict to the point the Virginia Bar Association had to order counsel to release all documents to this Defendant. . . .  The last critical stage in this case was counsel failure to object to all the PSR and Court enhancement[s so as to] to preserve this issue for appeal. Especially the intended loss amount, obstruction of justice and perjury enhancement. . . .

(ECF No. 206, at 4–6.)[6]

Additionally, Petitioner seeks to amend or to add the following claims of error by appellate counsel and by the Court:[7]

Ground Two: The appellant's counsel Mr. Elliott Harding was ineffective assistance of counsel for failure to raise plain error issues on appeal of sentencing enhancement regarding the intended loss amount and other enhancements, obstruction of justice and perjury related to defendant testimony.

1) The Appellant's Counsel failed to raise the plain error issue regarding total intended loss amount of more than $3.5 to $9.5 million. . . .

2) Appeal Counsel failed to raise on appeal the perjury and obstruction of justice enhancement. . . .

3) Counsel should have raised the 2 level increase for 10 or more victims on appeal due to the fact[ that] 2B1.1(b)(2)(A)(1) was legally incorrectly applied, [instead] the defendant contends the victims were not more than 6 to 7 victims that government presented at trial.

Ground Three: The honorable court should grant the vacation of the sentencing enhancement due to plain error by the PSR calculation level, the government calculation is an error for the calculation of the intended loss attributed to the defendant.

1) The sentencing enhancement was [legally] incorrect[], [] and contrary to the law under U.S.S.G. The guideline sentencing was overestimated by the intended loss. This Court should only sentence this

---

[6] The Court refers to the above claims as the Proposed Amended Claims.

[7] The Court has sought to leave the Petitioner's language intact, except when using bracketed language to make clearer the relief sought by Petitioner.

defendant to the foreseeable by [sic] the actual, not the Government estimation. . . .

2) The defendant contends that since the guideline is advisory, this court should resentence this defendant under the new Shadow Guidelines that federal judge's are now implementing in fraud cases across the country. . . .

3) Under the new law of U.S.S.G commission Amendment 821 PART B the Sentencing Commission has made the Guideline retroactive regarding 2B1.1(b)(2) which warrants resentencing. . . .

4) The defendant pray the court vacate the enhancement of perjury and obstruction of justice.

5) The defendant pray this court grant his relief and vacate all the enhancement.

(*Id.* at 6–7.)[8]

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). The Court appropriately denies as futile leave to amend when the statute of limitations bars a new claim. *See Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011). The Motion to Amend will be granted in part and denied in part. The Court will address those claims that are properly amended in Part III. The Court will explain why it would be futile to permit amendment of Proposed Amended Claim 9 and Proposed Amended Grounds Two and Three and their subparts.

## III.    Ineffective Assistance of Counsel

### A.    Applicable Law

---

[8] The Court refers to these claims as the Proposed Amended Grounds Two and Three and subparts.

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B.   Alleged Ineffectiveness In The Plea Process

In Claim Four, Petitioner contends that he was denied the effective assistance of counsel because his counsel "guaranteed no more than 8 years even if [he] lost" and "that there was never any talk of a plea." (ECF No. 190, at 17.) In his Proposed Amended Claims Petitioner further contends that:

> 2. Counsel failed to present any plea offer that was presented to him during pretrial stage. When government emailed it to him, counsel never presented to defendant. Even if defendant was professing his innocence. It [is] still defendant['s] right to know one was on the table.
> 3. Counsel ineffectiveness was during the plea offer stage. Counsel professional duty is to present any type of offer that was offer by the government.

. . . .
    6. Counsel coerced the defendant into taking the case to trial, that defendant's exposure was a maximum 8 years sentence, again showing counsel was ineffective.

(ECF No. 206, at 4, 5.)

Petitioner's trial counsel, William J. Viverette, swears, in pertinent part that:

> I met with Mr. Smith in person at my office, by telephone and at Northern Neck Regional Jail on numerous occasions, as necessary and whenever he requested, in order to discuss his case, determine potential trial strategies, review all of the evidence, and consider all of his plea options.
>
> . . . .
> Mr. Smith falsely alleges that I advised him that trial was his only option. I advised Mr. Smith how his sentencing guidelines were calculated and that if he pleaded guilty the United States was willing to agree to give him the maximum three (3) point reduction in his guidelines for his acceptance of responsibility and his early plea as well as not seek to litigate an enhancement for elevated losses to the numerous victims. Upon presenting this plea offer to Mr. Smith, he rejected any plea agreement and informed counsel he was not going to plead guilty to something he didn't do. Mr. Smith repeatedly refused to cooperate with the United States, rejected a guilty plea option and continuously demanded a trial.
> Finally, the petitioner Mr. James Leonard Smith falsely alleges that "the greatest reson[sic] for ineffective counsel" is that I promised and guaranteed him a maximum sentence of eight (8) years if he lost at trial. I never guaranteed Mr. Smith any specific outcome. Rather, I cautioned Mr. Smith concerning the risks of an enhanced sentence well above his guidelines given the numerous and sympathetic victims of the criminal scheme, the high dollar amount of the losses and the substantial likelihood of his being convicted on some or all of the counts he was indicted on.

(ECF No. 195-2, ¶¶ 2, 8, 9 (internal paragraph numbers omitted).)[9]

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quoting *McMann v.*

---

[9] The Government also included an email sent to Mr. Viverette exploring whether Petitioner would be open to pleading guilty. (ECF No. 195-1.)

*Richardson*, 397 U.S. 759, 771 (1970)).  Generally, claims of ineffective assistance of counsel during the plea process fall into three categories.  First, "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance."  *United States v. Brannon*, 48 F. App'x 51, 53 (4th Cir. 2002) (citing *United States v. Blaylock*, 20 F.3d 1458, 1465–66 (9th Cir. 1994)); *see Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (citations omitted).  Second, a defense attorney's inaccurate advice or misinformation in conveying a plea offer may constitute deficient assistance.  *Brannon*, 48 F. App'x at 53 (citing *Paters v. United States*, 159 F.3d 1043, 1047–48 (7th Cir. 1998); *see United States v. Merritt*, 102 F. App'x 303, 307–08 (4th Cir. 2004); *Wolford v. United States*, 722 F. Supp. 2d 664, 688 (E.D. Va. 2010) (concluding that counsel was deficient where he "misled [the petitioner] into believing that she had some possibility of prevailing at trial on the basis of several non-viable defenses").  Third, incomplete advice in conveying a plea also may provide a basis for a claim of ineffective assistance of counsel.  *See Wolford*, 722 F. Supp. 2d at 689 (concluding that "counsel's incorrect and incomplete legal advice to [the petitioner] during the plea negotiation process was objectively unreasonable" (citing *Strickland*, 466 U.S. at 688); *see also United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." (citing *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985); *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948))).  Here, Petitioner contends that counsel failed to convey the government plea discussions and provided incomplete and inaccurate advice during the

plea process. No need exists to resolve any factual dispute as to whether that is true, because on the present § record Petitioner has not demonstrated prejudice.

"[T]he prejudice inquiry focuses on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Merritt*, 102 F. App'x at 307 (quoting *Hill*, 474 U.S. at 59). Petitioner must demonstrate "a reasonable probability" that he would have accepted a plea offer if he "had . . . been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see Merritt*, 102 F. App'x at 307. Such a showing requires a convicted defendant to "present some credible, non-conclusory evidence that he would have [accepted a proffered plea] had he been properly advised." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (quoting *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995)).[10] Petitioner has not done so. At no point, does Petitioner provide "any statement that he would have accepted the government's plea offer if properly advised." *Puglisi v. United States*, 586 F.3d 209, 216 (2d Cir. 2009). This alone forecloses this claim. *Id.*

"A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders*, 341 F.3d at 723 (citing *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998); *Engelen*, 68 F.3d at 241); *see Chesney v.*

---

[10] In this case there was no formal plea offer, only plea discussions. Those discussions involved Petitioner pleading to Count One of the Superseding Indictment with a potential sentence of 63 to 78 months. (ECF No. 195-1, at 1–2.)

15

*United States*, 367 F.3d 1055, 1060 (8th Cir. 2004). In this regard, Petitioner did not merely stand on his right to require the Government to prove its case at trial. Rather, Petitioner took the stand and disputed any knowledge that that he was engaged in a conspiracy to defraud the investors with Chimera. Indeed, even in the present post-conviction proceedings Petitioner insists that he is innocent. (ECF No. 190, at 1 ("I have from the beginning declared my innocence and this has not changed.").) Given these circumstances, the Court finds "palpably incredible" Petitioner's suggestion that prior to trial, he would have pled guilty to any of the crimes charged or accepted the Government's informal offer to plead guilty to Count One. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted) (citation omitted); *see Sanders*, 341 F.3d at 722–23; *Jackson v. United States*, 638 F. Supp. 2d 514, 581–82 (W.D.N.C. 2009) (concluding that in light of the petitioner's expressed desire to fight the charges, he failed to demonstrate a reasonable probability that he would have accepted the plea offer during the window of opportunity to accept the plea); *Goudie v. United States*, 323 F. Supp. 2d 1320, 1335–36 (S.D. Fla. 2004) (rejecting petitioner's claim that he would have accepted the offer when, at the time the plea was open, the petitioner insisted he was innocent). Accordingly, Claim Four and Proposed Amended Claims 2, 3, and 6 will be dismissed.

**C.    Alleged ineffectiveness with respect to calling witnesses**

In Original Claim Two (a), Petitioner complains that counsel should have called Stuart Anderson[11] and Miguel Rubalcava as witnesses. In Claim Three (b), Petitioner faults counsel for not calling Jon Garrett. Relatedly, in Proposed Amended Claim 4, Petitioner asserts that counsel failed "to submit the defendant's witness list and use his subpoena power to secure critical testimony for defendant case was ineffective." (ECF No. 206, at 4.)

### 1. Counsel's response

Counsel provided the following explanation as to why he did not call Anderson and Rubalcava as witness:

> The petitioner James Leonard Smith falsely alleges that I failed to prepare a witness list and subpoena Stuart Jay Anderson and Miguel Centinos Rubalcava and present various witnesses as he requested. Mr. Stuart Jay Anderson was a charged co-conspirator who had pled guilty in separate proceedings and was most likely a cooperating government witness. He was believed to be assisting the government pursuant to a cooperation agreement in exchange for a reduced, more favorable sentence. Mr. Smith and I discussed Mr. Anderson's cross examination as an adverse witness. We did not intend to call him as our own defense witness because we knew he would be a harmful witness to Mr. Smith. I was not instructed by Mr. Smith to depose or subpoena him; rather, we discussed how to limit his damage to the defense's case if the government chose to call him. Mr. Smith never asked me to move to continue the case when the government chose not to call Stuart Anderson to testify in their case. Mr. Smith and I were both glad he did not testify because we expected he would be harmful to our defense case.
>
> Regarding Mr. Miguel Rubalcava, he is most likely a fictitious employee of Santander Bank. It is doubtful that such a person even exists. The evidence supported the fact that he was not a real person. I was never instructed by Mr. Smith to subpoena Mr. Rubalcava as Mr. Smith and I were

---

[11] Stuart Anderson served as the escrow attorney for the Chimera conspiracy. His presence provided investors with the illusion of extra security because their funds passed through U.S. based attorney before moving offshore. Anderson pled guilty to one count of wire fraud.

both aware that we had no way to find him or subpoena him as his whereabouts were unknown even if he did exist.

I made repeated attempts to contact Jon Garrett, a former business associate of Mr. Smith, to request his willingness to discuss the case with me as a potential witness for the defense. Mr. Garrett refused to return my calls or provide any indication that he might be helpful to Mr. Smith. After discussions with Mr. Smith, we decided to give up on the possibility of his assistance with the defense. His knowledge and involvement in the specific counts as indicted was very limited at best.

(ECF No. 195-2 ¶ 5.)

### 2.    Analysis

Petitioner fails to demonstrate counsel performed deficiently or that he was prejudiced. Rubalcava was a fictitious person invented by the conspiracy to scam the investors out of money. Further, Petitioner fails to identify with specificity what information counsel could have elicited from Stuart Anderson or Jon Garrett that could possibly alter the outcome of these proceedings. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation").[12] Accordingly, Claims Two (a), Three (b), and Proposed Claim 4 will be dismissed.

### D.    Petitioner's decision to testify

---

[12] In Claim Two (b), Petitioner complains that counsel should have objected to the testimony of the Villalgordo-Garcia, the Banco Santander representative, who testified that Rubalcava was never employed by Banco Santander. (*See* ECF No. 195, at 12.) Petitioner fails to suggest how counsel could have successfully objected to this testimony. Petitioner fails to demonstrate deficiency or prejudice. Claim Two (b) will be dismissed.

In Claim Two (c), Petitioner asserts that counsel improperly encouraged him to take the stand. In Proposed Amended Claim 7, Petitioner asserts that, "Counsel was ineffective by coercing the defendant to take a stand on his behalf when there was a likelihood to an exposure to self-incrimination, perjury and obstruction of justice enhancement. . . ." (ECF No. 206, at 5.)

Counsel responds:

> The defense's response to the evidence ultimately presented by the government at trial and the defense's case in response, the defense evidence presented, and the choice by Mr. Smith to testify on his own behalf were the product of cooperation and trial strategy jointly developed between myself and my client after extensive and careful communication and planning between us.
>     . . . .
>     The petitioner Mr. James Leonard Smith falsely alleges that I forced him to testify against his will. I advised Mr. Smith on multiple occasions that he alone could decide to waive his absolute and constitutional right against self-incrimination. Mr. Smith chose on his own to testify and did so knowingly and intelligently after my advice and counsel. Judge Hudson also advised the defendant that he had the right not to testify and made sure that Mr. Smith understood his rights and chose on his own to waive his right and chose to testify. Mr. Smith incorrectly claims that I should have objected to both the United States Attorney's and Judge Hudson's accusations that Mr. Smith committed perjury and obstruction of justice when he testified. The United States is entitled to argue the truth and veracity of the defendant's testimony and the Judge is entitled to opine on the evidence at sentencing.

(ECF No. 195-2 ¶¶ 4, 6.)

The record, including the Court's observations of Petitioner, reflects that he took the stand of his own accord. Petitioner fails to demonstrate that counsel performed deficiently with regard to the advice he provided to Petitioner. Any prejudice Petitioner suffered was the product of his own decision to commit perjury. Because Petitioner fails

to demonstrate deficiency or prejudice, Claim Two (c) and Proposed Amended Claim 7 will be dismissed.

### E.   Alleged ineffectiveness with respect to evidence

In Claim One, Petitioner asserts that counsel should have introduced an email wherein Bridge stated: "Do not let Jay know of my new email or phone number[,]" to prove that Petitioner was unaware that Chimera was defrauding its investors. (ECF No. 190, at 1.) Given the overwhelming evidence of Petitioner's guilt, this email could not have any impact on the outcome of the trial. Accordingly, Claim One will be dismissed because Petitioner fails to demonstrate deficiency or prejudice.

Next, in Proposed Amended Claim 1, Petitioner contends that, "Counsel failed to go over the discovery material with defendant in this case before trial . . . at least once." (ECF No. 206, at 4.) Relatedly, in Proposed Amended Claim 5, Petitioner asserts: "Trial counsel failed to present evidence that defendant prepared for counsel from his own personal files as well as the discovery material he gathered before trial, notes, email, text, transactions to refute the government case before the jury." (*Id.* at 5.)

Counsel responds:

> On numerous occasions, Mr. Smith and I reviewed the discovery materials provided by the United States as well as various documents and potential evidence provided to me by Mr. Smith himself. After multiple meetings and consultations between Mr. Smith and myself, we determined a trial strategy for the potential direct presentation of various items of evidence and testimony and the cross examination of the government's witnesses and documents. We discussed the substantial risks of presenting and responding to certain incriminating evidence, both witness testimony and documents, as well as the application of the federal rules of evidence and the admissibility of specific documents for both the government and the defense.
> . . . .

20

Mr. Smith falsely alleges that I did not devote sufficient time and effort to his defense. I spent several hundred hours reviewing discovery materials and my paralegal Pauline Madden assisted with trial preparations. I met with Mr. Smith on multiple occasions and included him in extensive trial preparation. I was not surprised by any of the government's evidence which was presented at trial. I made appropriate objections and arguments regarding the admissibility of certain evidence and laid the proper foundation for certain potential appealable issues. I aggressively cross-examined the government's numerous witnesses. I was well prepared for trial and provided Mr. Smith with a vigorous and thorough defense. I advised Mr. Smith regarding the current law concerning calculating restitution and joint liability for the entire criminal enterprise and its enhancing effect at sentencing. Unfortunately, the evidence against Mr. Smith was overwhelming and he was found by the jury and judge as not believable or credible in his testimony.

(ECF No. 195-2 ¶¶ 4, 7.)

Petitioner fails to adequately articulate what missing evidence was not presented. This is fatal to his claim. "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)). Under these circumstances, the Petitioner cannot meet his burden under either prong of the *Strickland* test. *See Bassette v. Thompson*, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of witness). Because Petitioner fails to demonstrate deficiency or prejudice, Proposed Amended Claims 1 and 5 will be dismissed.

21

Next, in Claim Three (a), Petitioner faults counsel for failing to properly cross-examine FBI Special Agent Joseph Quinn. Special Agent Quinn testified about a meeting he had with Petitioner in 2013. (ECF No. 135, at 95.) Petitioner had been involved with a company that was trading in medium term notes. (*Id.* at 100.) Petitioner told potential investors their principal was not at risk, and that they could obtain high interest rate returns on their investment. (*Id.* at 98, 100.) Petitioner told Agent Quinn that the company that traded the notes was located in Europe. (*Id.* at 100.) Agent Quinn told Petitioner that, "any investment program which offered little or no risk and offered above normal returns was likely a fraudulent investment." (*Id.* at 101.) Counsel unsuccessfully objected to the admission of this testimony at trial and challenged its admission on appeal. On cross-examination, Quinn acknowledged that Petitioner was not charged with any crime for his involvement in the above-described scheme. (*Id.* at 106.) Petitioner fails to articulate how counsel should have better cross-examined Agent Quinn. *See Sanders*, 373 U.S. at 19 (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). Accordingly, Petitioner fails to demonstrate deficiency or prejudice. Claim Three (a) will be dismissed.

### F.    Alleged ineffectiveness at sentencing

In Claim Three (c) and Proposed Amended Claim 8(b), Petitioner faults counsel for failing to adequately challenge Petitioner's sentencing enhancement for obstruction of justice for committing perjury. The Court overruled the objection made by Petitioner's counsel for this enhancement. (ECF No. 143, at 1–2; ECF No. 153, at 1.) Petitioner fails

to suggest any viable basis for a successful objection. Petitioner appropriately received this enhancement because he falsely testified that he had no reason to believe he was involved in a scheme to defraud. Petitioner fails to demonstrate deficiency or prejudice. Claim Three (c) and Proposed Amended Claim 8(b) will be dismissed.

Next, in Claim Three (d), Petitioner faults counsel for failing to challenge the fact that the "prosecution misrepresented the total dollar amount by including transactions totaling $2.7M." (ECF No. 190, at 3–4.) Petitioner asserts that "the prosecution misrepresented the total dollar amount by including legal transactions." (ECF No. 190, at 16.) Petitioner was held responsible for a total loss amount of $15,867,325.00. (ECF No. 152 ¶ 31.) This amount was calculated based on the actual loss and intended loss that was attributable to Petitioner's crimes. Petitioner fails to identify the alleged inappropriate legal transactions that should not have been included in this amount. Petitioner fails to demonstrate that counsel was deficient or that he was prejudice by the failure to raise the specious objection he urges here. Claim Three (d) will be dismissed.

Relatedly, in Proposed Amended Claim 8(a), Petitioner contends that counsel was deficient because Petitioner should not be held responsible for the amount of intended loss, but only for the actual loss that was reasonably foreseeable to him. (ECF No. 206, at 6.) Petitioner was appropriately held accountable for the amount of actual loss and the amount of intended loss reasonably foreseeable to him. *See United States v. Boler*, 115 F.4th 316, 327 (4th Cir. 2024) ("In sum, the structure of the Guidelines supports the conclusion that the meaning of 'loss' is broad enough to encompass intended loss."). Accordingly, counsel reasonably bypassed the objection Petitioner urges here. Instead,

23

counsel determined to move for a variant sentence, in part, on the ground that including the amount of intended loss overstated the seriousness of Petitioner's offense. (ECF No. 143, at 2.) Petitioner fails to demonstrate that counsel performed deficiently or that he was prejudiced. Proposed Amended Claim 8(a) will be dismissed.

## IV.    Permitting Amendment Of Petitioner's Remaining Claims Would Be Futile

As explained below, permitting amendment of Proposed Amended Claim 9 and Proposed Amended Grounds Two and Three would be futile. Proposed Amended Ground Three and its subparts are procedurally defaulted. Proposed Amended Claim 9 and Proposed Amended Ground Two and its subparts are barred by the relevant statute of limitations.

### A.    Procedural Default

The doctrine of procedural default prevents petitioners from bringing claims on habeas review that they could have raised on direct review, but did not do so. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted) ("The background for our discussion is the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."). Because Petitioner could have raised Proposed Amended Ground Three and all of its subparts on direct appeal and did not, they are barred from review here.[13] Accordingly, the Motion to Amend with respect to Proposed Amended Ground Three and its subparts will be denied.

### B.    Statute of Limitations

---

[13] Petitioner fails to demonstrate cause and prejudice or actual innocence to excuse his default.

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA")

amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a

§ 2255 Motion. Specifically, 28 U.S.C. § 2255(f) now reads:

> **(f)**    A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>> **(1)**    the date on which the judgment of conviction becomes final;
>> **(2)**    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>> **(3)**    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> **(4)**    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner's convictions became final on December 21, 2022, the last day to file a

petition for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003)

("Finality attaches when t[he] [Supreme] Court affirms a conviction on the merits on

direct review or denies a petition for a writ of certiorari, or when the time for filing a

certiorari petition expires."); Sup. Ct. R. 13(1).[14]  On December 14, 2022, Petitioner filed

his § 2255 Motion within the statute of limitations. However, Petitioner did not file his

---

[14] Petitioner's right to petition for certiorari arose after the United States Supreme Court returned to the normal 90-day period to petition for certiorari. *See Marciano v. Dotson*, No. 2:24CV304, 2024 WL 4849108, at *3 (E.D. Va. Oct. 17, 2024) (explaining the Supreme Court extended this period to 150 days during COVID-19 pandemic), *report and recommendation adopted*, No. 2:24CV304, 2024 WL 4847362 (E.D. Va. Nov. 20, 2024).

Motion to Amend until September 28, 2023, after the limitation period expired.

Accordingly, such claims are barred by the statute of limitations unless Petitioner

demonstrates entitlement to a belated commencement of the limitations period under 28

U.S.C. § 2255(f)(2)–(4), entitlement to equitable tolling, *see United States v. Sosa*, 364

F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)),

or the new claims relate back to the claims in the timely § 2255 Motion, *see United States*

*v. Pittman*, 209 F.3d 314, 317–18 (4th Cir. 2000).  Neither Petitioner nor the record

demonstrate entitlement to a belated commencement of the limitation period or equitable

tolling.  Furthermore, as explained below, Proposed Amended Claim 9 and Proposed

Amended Ground Two and its subparts do not relate back to the claims in the timely filed

§ 2255 Motion.

Rule 15 allows for amendments to the petition after the one-year statute of

limitations, provided the amendment relates back to the original timely filed petition.  A

claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or

attempted to be set out—in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).

An amended claim "does not relate back (and thereby escape AEDPA's one-year

time limit) when it asserts a new ground for relief supported by facts that differ in both

time and type from those the original pleading set forth."  *Mayle v. Felix*, 545 U.S. 644,

650 (2005).  In this regard, it is not sufficient that the new claim simply "has the same

form as the original claims," if the new claim "arises out of wholly different conduct."

*Pittman*, 209 F.3d at 318.  Thus, "a petitioner does not satisfy the Rule 15 'relation back'

standard merely by raising some type of ineffective assistance in the original petition, and

then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)).

In Proposed Amended Claim Nine, Petitioner complains about counsel in the post-conviction context. Similarly, in Proposed Amended Ground Two and its subparts, Petitioner complains about the ineffectiveness of appellate counsel. These claims arise out of wholly different conduct than the claims of error by counsel at trial in the original § 2255 Motion and hence do not relate back. *See Pittman*, 209 F.3d at 318 (citing *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999), for the proposition that failure to file an appeal is not the same type of error as failure to seek a downward departure or challenge the drug type at sentencing)); *see also United States v. Hernandez*, 436 F.3d 851, 857–58 (8th Cir. 2006) (holding that ineffective assistance claim alleging that counsel inadequately cross-examined two witnesses did not relate back to a claim for ineffective assistance related to counsel's failure to object to the admission of evidence lacking a proper foundation); *see Mandacina v. United States*, 328 F.3d 995, 1002 (8th Cir. 2003) (concluding that counsel's alleged failure to investigate the police report of an interview naming potential suspects was not a similar type of error as allegedly failing to discover exculpatory footprints during counsel's investigation of the case). Accordingly, Petitioner's Motion to Amend to add these claims will be denied.

### IV.    Outstanding Matters and Conclusion

Petitioner has requested copies of counsel's Criminal Justice Act ("CJA") billing records. (ECF No. 258.) "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). However, "[a] judge may, for good cause, authorize a party to conduct discovery." Rule 6(a), Rules Governing § 2255 Proceedings in U.S. District Courts. "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief." *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (citations omitted); *see also Bracy*, 520 U.S. at 908–09. Petitioner has made no such showing. Accordingly, Petitioner's request for counsel's CJA billing records (ECF No. 258) will be denied.

Petitioner also has moved to supplement the record in the present proceedings. (ECF No. 259.) Petitioner's motion will be granted to the extent that the Court will consider the documents that Petitioner attached to his motion to supplement. To the extent that Petitioner seeks to supplement the record with matters that he has yet to produce, the motion will be denied. Accordingly, the Motion to Supplement (ECF No. 259) will be granted in part and denied in part.

The Motion to Amend (ECF No. 206) will be granted in part and denied in part. The § 2255 Motion (ECF No. 190) will be denied. Petitioner's claims and the action will be dismissed. A certificate of appealability will be denied.

An appropriate Order shall issue.

_____/s/_____
Henry E. Hudson
Senior United States District Judge

Date: Oct. 21, 2025
Richmond, Virginia